## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND
## CIVIL DIVISION

| | | |
|---|---|---|
| **MARYNA YURCHENKO**<br>19 Wagnera Street, Apartment 19<br>Code 52-129, Wroclaw, Poland<br>            *Plaintiff,*<br><br>v.<br><br>**SYSCO EASTERN MARYLAND, LLC**<br>33300 Peach Orchard Road<br>Pocomoke City, MD 21851<br><br>    Serve on:<br>    CSC-LAWYERS INCORPORATING<br>     SERVICE COMPANY<br>    7 ST. PAUL STREET<br>    SUITE 820<br>    BALTIMORE MD 21202<br><br>and<br><br>**SYSCO CORPORATION**<br>1390 Enclave Parkway<br>Houston, TX 77077<br><br>    Serve on:<br>    CSC-LAWYERS INCORPORATING<br>    SERVICE COMPANY<br>    7 ST. PAUL STREET<br>    SUITE 820<br>    BALTIMORE MD 21202<br><br>and<br><br>**CONAGRA BRANDS, INC., F/K/A<br>CONAGRA FOODS INC.**<br>222 W. Merchandise Mart Plaza, Suite 1300<br>Chicago, Illinois 60654<br><br>    Serve on:<br>    THE CORPORATION TRUST<br>    INCORPORATED<br>    SUITE 201 | * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * | CASE NO: _____<br><br><br><br><br><br><br><br><u>**JURY TRIAL DEMANDED**</u> |

| | |
|---|---|
| 2405 YORK ROAD | * |
| LUTHERVILLE-TIMONIUM MD 21093 | * |
| | * |
| and | * |
| | * |
| **FULL-FILL INDUSTRIES, LLC** | * |
| 400 N Main St | * |
| Henning, IL, 61848 | * |
| | * |
| and | * |
| | * |
| **DS CONTAINERS, INC.** | * |
| 1789 Hubbard Ave | * |
| Batavia, IL 60510 | * |
| | * |
| and | * |
| | * |
| **GARLAND COMMERCIAL** | * |
| **INDUSTRIES, LLC A/K/A GARLAND** | * |
| **COMMERCIAL RANGES, LTD.** | * |
| 2227 Welbilt Boulevard | * |
| New Port Richey, FL 34655 | * |
| | * |
| *Defendants.* | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT - CIVIL ACTION

Plaintiff Maryna Yurchenko brings the within Complaint against Defendants Sysco Eastern Maryland, LLC and Sysco Corporation (hereinafter collectively referred to as "Sysco"); Conagra Brands, Inc. F/K/A ConAgra Foods, Inc. (hereinafter collectively referred to as "Conagra"); Full-Fill Industries, LLC ("Full-Fill"); DS Containers, Inc. ("DS Containers"); and Garland Commercial Industries, LLC A/K/A Garland Commercial Ranges, Ltd. (hereinafter referred to as "Garland"). All of the party-defendants are alleged to be joint tortfeasors.

## PARTIES

1. This is an action for damages against Defendants, jointly and severally, in excess of Seventy-Five Thousand Dollars ($75,000.00).

2

2. Plaintiff Maryna Yurchenko, who lives at the foreign address set forth in the Caption, was residing and working in Delaware during the summer of 2019 when she was catastrophically injured as a result of a defective and unreasonably dangerous Sysco cannister with an item code identified as "4290049" (hereinafter "the subject cannister") which was designed, manufactured, assembled, tested, inspected, labeled, packaged, marketed, distributed, and sold by Sysco, Conagra, Full-Fill, and DS Containers (collectively referred to as "The Cannister Defendants"), and a defective and unreasonably dangerous Garland/US Range with integrated backguard and shelf (hereinafter referred to as "the subject range") which was designed, manufactured, assembled, tested, inspected, labeled, packaged, marketed, distributed, and sold by Garland.

3. Defendant Sysco Eastern Maryland, LLC, a subsidiary of Defendant Sysco Corporation, is a Delaware corporation with a principal place of business in Pocomoke City, Maryland.

4. Defendant Sysco Corporation is a Delaware corporation with a principal place of business in Houston, Texas, actively registered with Maryland's Department of State to conduct business in the State of Maryland. Upon information and belief, Sysco, a global food products leader, regularly conducts business in Baltimore City, including through another active subsidiary, Sysco Baltimore, LLC.

5. Defendant Conagra Brands, Inc. f/k/a ConAgra Foods, Inc. is a Delaware corporation with a principal place of business in Chicago, Illinois, actively registered with Maryland's Department of State to conduct business in the State of Maryland. Upon information and belief, Conagra, one of the nation's largest food services providers, manufactured the subject

cannister, which was sold and distributed under the Sysco brand name.

6. Defendant Full-Fill Industries LLC is an Illinois corporation with a principal place of business in Henning, Illinois. Upon information and belief, Full-Fill, a leading manufacturer of cooking oil sprays for major consumer and private brand customers and foodservice operators, filled the subject cannister with cooking oil spray.

7. Defendant DS Containers, Inc. is a Delaware corporation with a principal place of business in Batavia, Illinois. Upon information and belief, DS Containers, a manufacturer of spray cans including those with vents on the bottom, supplied the subject cannister into which Full-Fill placed the above-referenced cooking oil spray for Conagra and Sysco.

8. Defendant Garland Commercial Industries, LLC A/K/A Garland Commercial Ranges, Ltd. is a Delaware corporation with a principal place of business in Ontario, Canada, operating as a brand of Florida-based Welbilt, Inc. Upon information and belief, Garland sells ranges and other products throughout Maryland via over a dozen distributors, four of which are located in Baltimore City.

9. At all times material to this Complaint, all of the party defendants were acting by and through their agents, servants, employees, and ostensible agents, each of whom was within the course and scope of their employment.

## THE PRODUCTS

10. The products involved in this Complaint include the subject cannister (as set forth in Paragraph 2, above) and all of its warnings, instructions, and decals, as well as the subject range and all of its component parts including but not limited to the integrated backguard and shelf (as set forth in Paragraph 2, above) and all of its warnings, instructions, and decals.

11. The subject cannister was shipped to Maryland and sold directly to Plaintiff's

Delaware employer, Bethany Boathouse, by Sysco Eastern Maryland, LLC. Upon information and belief, the subject cannister contained u-shaped vents on the bottom, designed to open when the cannister buckled so that its contents, including cooking oil and flammable propellants, could escape and thereby alleviate internal pressure.

12. The subject range was shipped to Maryland and sold to Plaintiff's employer through Garland's Maryland distributor, Chesapeak Equipment Co. Inc.

## JURISDICTION AND VENUE

13. This Court has personal jurisdiction pursuant to Md. Cts. & Jud. Pro. Code §6-102 and §6-103, insofar as Defendants regularly conduct business in Maryland, such as supplying manufactured products in Maryland.

14. Venue is proper in Baltimore City pursuant to Md. Cts. & Jud. Pro. Code §6-201(a) because, upon information and belief, Defendants, including but not limited to Sysco and Garland, regularly conduct business in Baltimore City by selling products such as cooking spray cans and gas ranges.

## **THE INCIDENT**

15. Upon information and belief, on or about July 15, 2019, Plaintiff was working at her place of employment utilizing the subject range to roast peppers.

16. Unbeknownst to Plaintiff, the subject cannister was on the integrated backguard shelf of the range.

17. Due to the defective and unreasonably dangerous condition of the subject cannister as well as the defective and unreasonably dangerous condition of the subject range (including a shelf on the integrated backguard that was too low and too suspectable to becoming unreasonably dangerously hot), a fire originating from the subject cannister suddenly and unexpectedly occurred.

18. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject cannister on the part of The Cannister Defendants (as discussed more thoroughly below), and as a direct and proximate result of the defective and unreasonably dangerous condition of the subject range on the part of Garland (as also discussed more thoroughly below), Plaintiff sustained severe and permanent injuries to her body, including but not limited to significant burns and resultant disfigurement (for which she received extensive treatment at the Crozier Burn Center in Pennsylvania) for which she seeks recovery in the form of compensatory damages from all of the captioned Defendants to the fullest extent permitted by law.

19. The severe and permanent injuries sustained by Plaintiff on July 15, 2019 have significantly and likely permanently affected Plaintiff insofar as her ability to work, for which she now seeks recovery from all of the captioned Defendants to the fullest extent permitted by law insofar as lost past and future earnings, and lost earning capacity.

20. The severe and permanent injuries sustained by Plaintiff on July 15, 2019 have resulted in extensive past medical care, will result in extensive future medical care, and Plaintiff

seeks recovery for these past and future medical expenses from all of the captioned Defendants to the fullest extent permitted by law.

21. The severe and permanent injuries sustained by Plaintiff on July 15, 2019 have resulted in scarring, deformity, pain and suffering, mental anguish, humiliation, embarrassment, loss of well-being, disfigurement, severe restrictions on her ability to engage in normal activities, and inability to pursue and enjoy the normal and ordinary pleasures of life, for which Plaintiff now seeks recovery from all of the captioned Defendants to the fullest extent permitted by law.

## COUNT I
### STRICT LIABILTY AGAINST THE CANNISTER DEFENDANTS

22. Plaintiff incorporates by reference all of the above Paragraphs as if set forth fully herein.

23. The Cannister Defendants are in the business of designing, manufacturing, assembling, testing, inspecting, labeling, packaging, marketing, distributing, and selling aerosol cooking spray cans, including the subject cannister.

24. The subject cannister was defective and unreasonably dangerous to the ultimate users, operators or consumers, including Plaintiff, from both a consumer expectation and a risk-utility perspective, when it was designed, manufactured, assembled, tested, inspected, labeled, packaged, marketed, distributed, and sold by The Cannister Defendants for reasons including but not limited to the following:

>  (a) **The subject cannister and its component parts were defective and unreasonably dangerous because the design, manufacturing, assembly, testing, inspection, labeling, packaging, marketing, distribution, and selling process allowed the subject cannister to be at an unacceptably high risk of pressure build up and associated explosion when subjected to foreseeable heat;**

7

(b) The subject cannister was defective and unreasonably dangerous because it was neither designed, manufactured, assembled, tested, inspected, labeled, packaged, marketed, distributed, nor sold with adequate and available safety devices including but not limited to appropriate and proper venting systems which would prevent the cannister from experiencing dangerous pressure build up;

(c) The subject cannister was defective and unreasonably dangerous because it was neither designed, manufactured, assembled, tested, inspected, labeled, packaged, marketed, distributed, nor sold with adequate warnings and instructions that would alert consumers, operators, and workers of dangers associated with storing the cannisters, which are used for cooking applications, in the vicinity of cooking appliances;

(d) The subject cannister was defective and unreasonably dangerous because the product failed to meet all applicable and reasonable safety standards including but not limited to internal standards and other reasonable standards;

(e) The subject cannister was generally defective and unreasonably dangerous in its design, manufacture, assembly and warnings because it failed to provide adequate protection to operators, consumers, and workers (including Plaintiff) when being operated as advertised and marketed (or in a reasonably foreseeable manner), and was furnished without adequate warnings; and

(f) The subject cannister was defective and unreasonably dangerous due to the inadequacy or absence of warning stickers, placards, or any proper documentation, or notice to alert operators, consumers, and workers (including Plaintiff) regarding all of the hazardous conditions, as stated above.

25. On July 15, 2019, the subject cannister and all of its component parts were substantially unchanged from when the subject cannister was originally distributed by The Cannister Defendants.

26. For the reasons set forth above, the subject cannister was unreasonably dangerous to foreseeable users and occupants, including Plaintiff, who encountered the subject cannister in

8

an ordinary and foreseeable manner.

27. The defect(s) described above directly and proximately caused Plaintiff's catastrophic and permanent injuries, in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff's injuries.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages in excess of $75,000.00, costs, pre and post judgment interest, and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT II
### NEGLIGENCE AGAINST THE CANNISTER DEFENDANTS

28. Plaintiff incorporates by reference all of the above Paragraphs as if set forth fully herein.

29. The Cannister Defendants knew or in the exercise of due care should have known that the subject cannister would be used without inspection in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to consumers, operators, and workers, including, but not limited to Plaintiff.

30. The Cannister Defendants were under a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings for, package, market, distribute, and/or sell the subject cannister in a reasonably safe condition so as not to present a danger to members of the general public who reasonably and expectedly under ordinary circumstances would come into contact with the subject cannister, including but not limited to Plaintiff.

31. The Cannister Defendants breached their duty by negligently designing,

manufacturing, assembling, testing, inspecting, labeling, packaging, failing to adequately warn, marketing, distributing and/or selling the subject cannister when it was not in a reasonably safe condition for foreseeable use for reasons including, but not limited to the following:

    (a)    Failing to properly design, manufacture, assemble, test, inspect, label, package, market, distribute, and sell the subject cannister in a manner that did not cause it to be at an unacceptably high risk of pressure build up and associated explosion when subjected to foreseeable heat;

    (b)    Failing to properly design, manufacture, assemble, test, inspect, label, package, market, distribute, and sell the subject cannister with adequate and available safety devices including but not limited to appropriate and proper venting systems which would prevent the cannister from experiencing dangerous pressure build up;

    (c)    Failing to properly design, manufacture, assemble, test, inspect, label, package, market, distribute, and sell the subject cannister with adequate warnings and instructions that would alert consumers, operators, and workers of dangers associated with storing the cannisters, which are used for cooking applications, in the vicinity of cooking appliances;

    (d)    Failing to properly design, manufacture, assemble, test, inspect, label, package, market, distribute, and sell the subject cannister in a manner that met all applicable and reasonable safety standards including but not limited to internal standards and other reasonable standards;

    (e)    Failing to properly design, manufacture, assemble, test, inspect, label, package, market, distribute, and sell the subject cannister in a manner that provided adequate protection to operators, consumers, and workers (including Plaintiff) when being operated as advertised and marketed (or in a reasonably foreseeable manner), and failing to properly furnish the subject cannister with adequate warnings; and

    (f)    Failing to properly design, manufacture, assemble, test, inspect, label, package, market, distribute, and sell the subject cannister with proper and adequate warning stickers, placards, or any proper documentation, or notice to alert operators, consumers, and workers (including Plaintiff) regarding all of the hazardous conditions, as stated above.

32.    The negligence described above directly and proximately caused Plaintiff's

catastrophic injuries, which were incurred without contributory negligence or assumption of the risk on the part of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages in excess of $75,000.00, costs, pre and post judgment interest, and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT III
### PUNITIVE DAMAGES AGAINST THE CANNISTER DEFENDANTS

33. Plaintiff incorporates by reference all of the above Paragraphs as if set forth fully herein.

34. Prior to the July 15, 2019 incident and, upon information and belief, prior to selling the subject cannister to Plaintiff's employer shortly before the incident, The Cannister Defendants knew that the subject cannister was defective and unreasonably dangerous, as set forth above.

35. Prior to the incident, upon information and belief, The Cannister Defendants knew about other similar incidents occurring nationwide.

36. Prior to the incident, numerous other lawsuits were filed against some or all of The Cannister Defendants, stemming from similar incidents and alleging similar claims.

37. For example, going all the way back to 2014, a lawsuit was filed against Conagra in the United States District Court for the District of Connecticut stemming from a May 13, 2013 kitchen fire caused by an exploding over-pressurized and vented spray can (*Schmidt et al. v. Conagra Foods, Inc.*, Case No. 3:14-cv-01816) – a lawsuit which Conagra settled six months ago.

38. Upon information and belief, in the ensuing years, other similar product

11

liability/personal injury lawsuits were filed in state and federal courts in at least Illinois, New Jersey, New York, Ohio, and Texas, including but not limited to six lawsuits filed on May 7, 2019 in Cook County, Illinois.

39. Prior to the incident, The Cannister Defendants knew that cooking spray cans such as the subject cannister had an unreasonably dangerous propensity to release their contents at lower than expected temperatures and/or pressures.

40. Upon information and belief, to address the numerous incidents and lawsuits, in the beginning of 2019, The Cannister Defendants halted production of vented cooking spray cans such as the subject cannister, but refused to issue a nationwide recall to alert consumers such as Plaintiff's employer of the need to avoid using the unreasonably dangerous and defective product.

41. By selling an unreasonably dangerous and defective product and knowingly withholding material information from the unsuspecting public concerning the product's safety (or lack thereof) in order to maximize sales and profits, The Cannister Defendants acted in a willful, wanton, and malicious manner, guided by an evil or wrongful motive.

42. The Cannister Defendants' willful, wanton, and malicious behavior, in conscious and deliberate disregard for the safety and rights of consumers and workers including Plaintiff, entitles Plaintiff to punitive damages in an amount appropriate to punish The Cannister Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages in excess of $75,000.00, costs, pre and post judgment interest, and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT IV

## STRICT LIABILITY AGAINST DEFENDANT GARLAND

43. Plaintiff incorporates by reference all of the above Paragraphs as if set forth fully herein.

44. Garland in the business of manufacturing, designing, testing, assembling, marketing, distributing, and selling commercial ranges, including the subject range.

45. The subject range was defective and unreasonably dangerous to the ultimate users, operators or consumers, including Plaintiff, from both a consumer expectation and a risk-utility perspective, when it was designed, manufactured, tested, assembled, marketed, distributed, and/or sold by Garland for reasons including but not limited to the following:

(a) **The subject range and its component parts were defective and unreasonably dangerous because the subject range's design, manufacturing, testing, assembly, inspection, marketing, distribution, and selling process allowed the subject range to have an integrated backguard and shelf that was dangerously susceptible to being exposed to relatively high heat thereby resulting in the extremely dangerous scenario that a cannister located on the shelf would be subjected to the relatively high heat and resultant pressure build up/risk of explosion;**

(b) **The subject range was defective and unreasonably dangerous because it was neither designed, manufactured, tested, assembled, distributed, nor sold with adequate safety devices including a backguard shelf that was a reasonably safe height from the cooking service which would prevent any cannisters located thereon from becoming too hot and experiencing dangerous pressure build up;**

(c) **The subject range was defective and unreasonably dangerous because it was neither designed, manufactured, tested, assembled, distributed, nor sold with a backguard shelf that was resistant in its construction, insofar as design and materials, from becoming too hot;**

(d) **The subject range was defective and unreasonably dangerous because it was neither designed, manufactured, tested, assembled, distributed, nor sold with adequate warnings and instructions that would alert**

                **consumers, operators, and workers (including Plaintiff) of dangers associated with storing certain objects, including cannisters, on the backguard shelf.**

      **(e)**      **The subject range was defective and unreasonably dangerous because the product failed to meet all applicable and reasonable safety standards including but not limited to internal standards and other reasonable standards;**

      **(f)**      **The subject range was generally defective and unreasonably dangerous in its design, manufacture, assembly and warnings because it failed to provide adequate protection to operators, consumers, and workers (including Plaintiff) when being operated as advertised and marketed (or in a reasonably foreseeable manner), and was furnished without adequate warnings; and**

      **(g)**      **The subject range was defective and unreasonably dangerous due to the inadequacy or absence of warning stickers, placards, or any proper documentation, or notice to alert operators, consumers, and workers (including Plaintiff) regarding all of the hazardous conditions, as stated above.**

46.    On July 15, 2019, the subject range and all of its component parts were substantially unchanged from their condition when originally distributed by Garland.

47.    For the reasons set forth above, the subject range was unreasonably dangerous to foreseeable users and occupants, including Plaintiff, who was interacting with the subject range in an ordinary and foreseeable manner.

48.    The defect(s) described above directly and proximately caused Plaintiff's catastrophic and permanent injuries, in that it or they directly and in natural and continuous sequence produced, contributed substantially or enhanced Plaintiff's injuries.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages in excess of $75,000.00, costs, pre and post judgment interest,

and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

### COUNT V
### NEGLIGENCE AGAINST DEFENDANT GARLAND

49. Plaintiff incorporates by reference all of the above Paragraphs as if set forth fully herein.

50. Garland knew or in the exercise of due care should have known that the subject range would be used without inspection in an unreasonably dangerous condition, and would create a foreseeable and unreasonable zone of risk of harm to consumers, operators, and workers in the vicinity of the subject range, including, but not limited to, Plaintiff.

51. Garland was under a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings for, package, market, distribute, and/or sell the subject range in a reasonably safe condition so as not to present a danger to members of the general public who reasonably and expectedly under ordinary circumstances would come into contact with the subject range, including but not limited to Plaintiff.

52. Garland breached its duty by negligently designing, manufacturing, assembling, testing, inspecting, labeling, packaging, failing to adequately warn, marketing, distributing and/or selling the subject range when it was not in a reasonably safe condition for foreseeable use for reasons including, but not limited to the following:

> (a) **Failing to properly design, manufacture, test, assemble, inspect, market, distribute and sell the subject range with an integrated backguard and shelf that was not dangerously susceptible to being exposed to relatively high heat and the associated extremely dangerous scenario that a cannister located on the shelf would be subjected to the relatively high heat and resultant pressure build up/risk of explosion;**

(b) Failing to properly design, manufacture, test, assemble, inspect, market, distribute and sell the subject range with adequate safety devices including a backguard shelf that was a reasonably safe height from the cooking service which would prevent any cannisters located thereon from becoming too hot and experiencing dangerous pressure build up;

(c) Failing to properly design, manufacture, test, assemble, inspect, market, distribute and sell the subject range with a backguard shelf that was resistant in its construction, insofar as design and materials, from becoming too hot;

(d) Failing to properly design, manufacture, test, assemble, inspect, market, distribute and sell the subject range with adequate warnings and instructions that would alert consumers, operators, and workers (including Plaintiff) of dangers associated with storing certain objects, including cannisters, on the backguard shelf.

(e) Failing to properly design, manufacture, test, assemble, inspect, market, distribute and sell the subject range in a manner that met all applicable and reasonable safety standards including but not limited to internal standards and other reasonable standards;

(f) Failing to properly design, manufacture, test, assemble, inspect, market, distribute and sell the subject range in a manner that provided adequate protection to operators, consumers, and workers (including Plaintiff) when being operated as advertised and marketed (or in a reasonably foreseeable manner), and failing to provide adequate warnings; and

(g) Failing to properly design, manufacture, test, assemble, inspect, market, distribute and sell the subject range with adequate and reasonable warning stickers, placards, or any proper documentation, or notice to alert operators, consumers, and workers (including Plaintiff) regarding all of the hazardous conditions, as stated above.

53. The negligence described above directly and proximately caused Plaintiff's catastrophic injuries, which were incurred without contributory negligence or assumption of the risk on the part of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages in excess of $75,000.00, costs, pre and post judgment interest, and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues presented in this case.

Respectfully submitted,

**KETTERER, BROWNE & ASSOCIATES, LLC**

_[signature]_

---

Reza Davani, Esq.
AIS/CPF No.: 1212110211
T: (410) 885-6267
F: (855) 334-5626
Reza@KBAattorneys.com
www.KBAattorneys.com
336 S. Main Street
Bel Air, MD 21014
*Attorneys for Plaintiff*

Fredric S. Eisenberg, Esq. (*pro hac vice* to be filed)
Todd A. Schoenhaus, Esq. (*pro hac vice* to be filed)
fred@erlegal.com
todd@erlegal.com
Eisenberg, Rothweiler,
Winkler, Eisenberg & Jeck, P.C.
1634 Spruce Street
Philadelphia, PA 19103
215.546.6636
*Attorneys for Plaintiff*

DATE: July 12, 2022